UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MIRAKL, INCORPORATED,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>VTEX COMMERCE CLOUD SOLUTIONS, LLC, TYLER GREFF, ANDREW BROWNELL, JEREMY BLANFORD, GEORGE JYH-WEI CHANG, JOSEPH LEE, TIMOTHY SHAWN COCHRAN, and KEVIN GREGORY YEE,<br><br>　　　　Defendants.<br><br>GEORGE CHANG,<br><br>　　　　Plaintiff-in-Counterclaim,<br><br>v.<br><br>MIRAKL, INC. and ADRIEN NUSSENBAUM,<br><br>　　　　Defendants-in-Counterclaim. | Civil Action No. 1:20-CV-11836-RWZ |

**PLAINTIFF MIRAKL, INCORPORATED'S OPPOSITION
TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER [ECF 49]**

Less than one month after the Court's April 14, 2021 denial of Defendants' Motion to Dismiss and order that the Parties complete discovery by October 15, 2021, Defendants[1] seek – yet again – to circumvent their discovery obligations and to conceal evidence of their panoply of wrongdoings. This time they do so with specific notice of the frivolity of their alleged reasons for

---

[1] Tyler Greff ("Greff"), Andrew Brownell ("Brownell"), Jeremy Blanford ("Blanford"), George Jyh-Wei Chang ("Chang"), Joseph Lee ("Lee"), Timothy Shawn Cochran ("Cochran"), and Kevin Gregory Yee ("Yee") are referred to collectively herein as the "Individual Defendants." Together VTEX Cloud Solutions, LLC ("VTEX") and the Individual Defendants are referred to as "Defendants."

attempting to stall the progress of discovery in this matter. Accordingly, Mirakl, Incorporated ("Mirakl") respectfully requests that the Court deny Defendants' Motion for a Protective Order for the following reasons:

(1) Defendants' motion deliberately misrepresents Local Rule 26.1's applicability, in direct violation of Rule 3.3(a)(1) of the Massachusetts Supreme Judicial Court's Rules of Professional Conduct; and

(2) Defendants' blatant attempt to evade discovery directly conflicts with the Scheduling Order and the Court's denial of Defendants' motion to dismiss.

## ARGUMENT

Defendants' motion is not just another attempt by Defendants to conceal evidence from Mirakl and the Court, it also is an egregious and deliberate attempt to ignore the Court's April 14 orders and to mislead the Court as to the state of the applicable law.

I. **Defendants Base Their Request for Relief On Local Rule 26.1 Despite Having Actual Knowledge That The Federal Rules Preempt the Local Rules.**

After counsel for Defendants inaccurately maintained during a May 5, 2021 Local Rule 7.1 conference that Mirakl could not serve Defendants with more than "25 interrogatories" or "2 separate sets of requests for production," counsel for Plaintiff responded in writing and explained, in detail, the fallacy on which Defendants then based (and now continue to base) their objections to the April 27, 2021 interrogatories and requests for production that Mirakl properly served on each Defendant. May 5, 2021 Letter from Danielle Y. Vanderzanden to Bronwyn Roberts, Julianne Landsvik, and Amber Lee, attached as Exhibit 1 to the Declaration of Danielle Y. Vanderzanden in Support of Plaintiff's Opposition to Defendants' Motion for Protective Order (Vanderzanden Dec.), at 3-4. As that correspondence plainly informed Defendants, the First Circuit has rejected, on preemption grounds, the precise Local Rules-based limitation argument on which Defendants frivolously base their motion. *See NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1, 7 (1st Cir. 2002) ("[A] district court cannot enforce its local rules in a way that conflicts with

2

the Federal Rules of Civil Procedure."); *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989) ("Local district court rules cannot be construed in such a way as to render them inconsistent with applicable provisions of the Federal Rules of Civil Procedure."). Further, the United States District Court for the District of Massachusetts itself has held, at least twice, that Local Rule 26.1(c) is unenforceable to the extent that it conflicts with the Federal Rules of Civil Procedure. *Magnesium Elektron N. Am., Inc. v. Applied Chemistries, Inc.*, No. CV 18-40207-MGM, 2019 WL 7578395, at *3 (D. Mass. July 26, 2019); *St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch*, LLP, 217 F.R.D. 288, 289 (D. Mass. 2003). In the face of this case law, which is precisely on point, Defendants' deliberately incorrect statements about Local Rule 26.1's applicability violated Rule 3.3(a)(1) of the Massachusetts Supreme Judicial Court's Rules of Professional Conduct, which requires lawyers to refrain from making "a false statement of fact or law" and justify an award of sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure.

Notably, Defendants do not even attempt to contend (nor could they) that the written discovery they wish to evade somehow conflicts with Rule 33(a)(1) of the Federal Rules of Civil Procedure, which provides that "a party may serve on any other party no more than 25 written interrogatories," and Rule 34(a), which provides that "[a] party may serve on any other party a request within the scope of Rule 26(b)." Pursuant to the law in this Circuit, Mirakl may serve up to 25 interrogatories on each Defendant and Mirakl may serve requests for production on each Defendant. Accordingly, the Court should promptly and unambiguously order that Defendants provide Mirakl with timely discovery responses.

## II. Defendants Seek To Circumvent the Scheduling Order And Revisit Arguments The Court Already Rejected By Denying Defendants' Motion to Dismiss.

Defendants' scattershot motion constitutes nothing more than a flagrant attempt to delay discovery, conceal evidence, and render it impossible for the Parties to complete discovery by October 15, as the Scheduling Order requires. In addition, Defendants' alleged grounds for the motion directly clash with the Court's decision to deny Defendants' motion to dismiss in its entirety and misrepresent the case law on which Defendants rely.

### A. Mirakl is entitled to discovery, and the Court has ordered that the Parties complete it by October 15.

If one were to read no filing in this case other than Defendants' motion, one likely would reach the egregiously inaccurate conclusion that the First Amended Complaint ("FAC") alleges only claims under the Massachusetts Uniform Trade Secrets Act ("MUTSA"). However, even the most cursory review of any other filing in this case plainly reveals that Mirakl has alleged, and the Court has ordered the parties to conduct discovery with respect to, a myriad of claims that are wholly independent from the two counts that allege trade secret claims (ECF 19, Count II and III). More specifically, Mirakl has alleged:

(1) Breach of contract claims based on (a) each Individual Defendant's failure to return Mirakl property, including but not limited to electronically stored information ("ESI") and (b) several Individual Defendants' breaches of their contractual obligation to refrain from soliciting Mirakl's clients and/or employees (ECF 19 at Count I);

(2) Violations of the Computer Fraud and Abuse Act by each of the Individual Defendants (ECF 19 at Count IV);

(3) Breach of the duty of loyalty/fiduciary duty against each of the Individual Defendants (ECF 19 at Count V); and

(4) Tortious interference with contractual relations by VTEX (ECF 19 at Count VI).

Simply stated, Mirakl has alleged several claims that do not arise out of Defendants' violations of the MUTSA, and there is no basis for Defendants' reliance on the MUTSA's statutory

language. *E.g.*, *Monolithic Power Sys., Inc. v. Silergy Corp.*, No. 14-CV-01745-VC (KAW), 2015 WL 5897719, at *3 (N.D. Cal. Oct. 9, 2015) ("While [plaintiff's] breach of contract claim relates to the alleged use of confidential information, the contract provision breached does not mention trade secrets … . Therefore, [d]efendants are required to answer *without* the benefit of [plaintiff] identifying the confidential information it believes was utilized in the breach of the [agreement]."). In fact, Defendants have not cited even a single case that supports their baseless contention that trade secret "identification must come before discovery" regarding Mirakl's breach of contract, CFAA, fiduciary duty, and tortious interference claims. Memorandum of Law In Support of Defendants' Motion For A Protective Order, ECF 50, at 1. Moreover, the cases Defendants do cite in support of the substantially more limited proposition that trade secrets must be identified before a party "may obtain discovery related to trade secret misappropriation" are so substantively and procedurally different from this case as to either (1) conflict with Defendants' request for a protective order and establish that Mirakl is entitled to receive prompt responses to the outstanding discovery requests or (2) be of no relevance to this case.[2]

For example, the *L-3 Comm. Corp. v. Reveal Imaging Technologies, Inc.* decision cited on page 3 of Defendants' Memo arose in the context of a Rule 56(f) request for discovery relating to factual issues raised at summary judgment and "an agreement the two-year restraint of which" had expired approximately ten (10) years earlier. 18 Mass. L. Rptr.512, *12. In rejecting L-3's request for Rule 56(f) discovery, the court noted that "nothing in [the issues with respect to which L-3 sought discovery] would cause a different result" because L-3 had no right to enforce agreements between the Reveal Defendants and prior employers. *Id.* at *11-12. Unlike L-3's contract claims,

---

[2] Notably, even the MUTSA language on which Defendants rely does not even support their position. That language merely addresses the circumstances under which discovery "***relating to an alleged trade secret***" may commence. Ch. 93, § 42D(b).

5

Mirakl's contract claims arise out of written agreements between Mirakl and the Individual Defendants, and Mirakl brought its claims during the restricted period defined in those agreements. *See generally* FAC, ECF 19; *see also* agreements between Mirakl and each Individual Defendant, ECF 1-1 – ECF 1-7.

Only after disposing of L-3's contract claims, and only "[*b]ecause of* the foregoing resolution of the contract claims," did the L-3 court even consider whether to require L-3 to serve "a statement specifically identifying those trade secretes that form the basis of their trade secret misappropriation claims before discovery may be had *on those claims*." *Id.* at *13 (emphasis added). And, when the L-3 court did consider that question, it merely held that when "a plaintiff in a trade secret case seeks to discover the trade secrets and confidential proprietary *information of its adversary*, the plaintiff will *normally* be required to first identify with reasonable particularity the matter which it claims constitute a trade secret *before it will be allowed* (given a proper showing of need) *to compel discovery of its adversary's trade secrets*." *Id*. at *13, *citing Engelhard Corp. v. Savin Corp*., 505 A.2d 30, 33 (Del.Ch.1986) (emphasis added).

*Alnylam Pharms., Inc. v. Dicerna Pharms., Inc.*, 2016 WL 4063565, at *2 (Mass. Super.Apr. 6, 2016), provides no additional support for the proposition that any plaintiff who files a complaint that contains a claim under the MUTSA cannot obtain any discovery (not even discovery relating to that plaintiff's own confidential information) on any of its claims until the plaintiff identifies the stolen trade secrets with more reasonable particularity than *L-3*. Neither the holding in *Alnylam,* nor any dicta in the opinion even remotely suggests that a plaintiff seeking discovery regarding its own confidential information (and the return of that information) must do anything at all before obtaining discovery. Instead, the *Alnylam* decision addressed the limited

6

circumstance in which the plaintiff seeks "discovery of *a defendant's confidential information regarding the development of the defendant's own technology . . .*" *Id.* at *1-2.

Unlike *L-3* and *Alnylam*, this is not a case in which Mirakl seeks discovery relating to VTEX's trade secrets. Mirakl merely has requested discovery regarding the extent to which Mirakl's confidential information resides on any Device currently or previously accessed or used by any Defendant. Thus, Mirakl seeks discovery relating to Defendants' theft, retention, use, and disclosure of Mirakl's own confidential information and Mirakl's own trade secrets. In addition, Mirakl's discovery requests are more expansive than its trade secret claims. Mirakl seeks discovery relating to all of its claims. The scope of discovery Mirakl seeks and the factual disparities between this case and the *L-3* and *Alnylam* cases render those decisions wholly inapplicable to this dispute.

Importantly, Mirakl's trade secret claims are a subset of its claims that (1) the Individual Defendants breached their agreements with Mirakl by failing to return Mirakl's property to Mirakl and (2) the Defendants misappropriated Mirakl's confidential and proprietary information. Because those are claims with respect to which Mirakl is unequivocally entitled to timely discovery responses, without regard to whether Mirakl has identified the trade secrets at issue, the Court should compel all Defendants to provide timely responses to the discovery that Mirakl served on April 27. *E.g., Neural Magic, Inc. v. Facebook, Inc.*, 1:20-cv-10444 (D. Mass. Oct. 29, 2020) (noting that the MUTSA does "not affect other civil remedies to the extent that they are not based upon misappropriation of trade secret") *citing* 93A, § 42F(b)(3). The *Neural Magic* decision is particularly relevant in that it explicitly notes that the MUTSA does not apply to confidential information that may not be entitled to trade secret protection.

> Given that the MUTSA is silent about uniformity with respect to confidential
> information that may not constitute a trade secret, the text of Section 42F which

limits preemption to civil remedies for the misappropriation of trade secrets, the split in authority on the scope of preemption of similar UTSA provisions and the lack of authority in Massachusetts, the Court does not conclude that MUTSA preemption applies to the state law claims that Defendants now challenge where these claims rely upon the alleged the theft of alleged confidential and information.

*Id., citing Cenveo Corp. v. Slater*, No. 06-CV-2632, 2007 WL 527720, at *3 (E.D. Penn. Feb. 12, 2007).

### B. Even if Mirakl Had an Obligation to Identify the Trade Secrets, the Court Already Rejected Defendants' Contention that Mirakl Failed to do so.

Defendants' refusal to provide Mirakl with discovery directly clashes with the Court's decision to deny Defendants' motion to dismiss in its entirety. In their motion to dismiss, Defendants explicitly asked the Court to conclude that Mirakl had failed to identify its trade secrets with reasonable particularity and/or failed to sufficiently describe "the nature of the trade secrets." E.g., ECF 21 at 12-13. In denying the motion to dismiss, the Court rejected those arguments. Absolutely nothing relevant to the Court's denial of the motion to dismiss has changed, and Defendants have no good faith basis for hindering discovery and disregarding the Court's order to commence and complete discovery forthwith.

Defendants' arguments fail not only procedurally, but also substantively because Mirakl has sufficiently identified the trade secrets at issue to commence discovery on Mirakl's MUTSA claims.[3] In relevant part, the MUTSA provides that "[b]efore commencing discovery relating to an alleged trade secret, the party alleging misappropriation shall identify the trade secret with sufficient particularity under the circumstances of the case to allow the court to determine the appropriate parameters of discovery and to enable reasonably other parties to prepare their

---

[3] While Mirakl maintains that it has already identified the trade secrets at issue with the necessary "reasonable particularity" for the purposes of discovery, Mirakl will further identify the trade secrets at issue by file name after the entry of a protective order governing the exchange of confidential information.

8

defense." Mass. Gen. Laws Ann. ch. 93, §§ 42D(b). This is not meant to be an onerous requirement. As stated by another court,

> "Reasonable particularity" … does not mean that the party alleging misappropriation has to define every minute detail of its claimed trade secret at the outset of the litigation. Nor does it require a discovery referee or trial court to conduct a miniature trial on the merits of a misappropriation claim before discovery may commence. Rather, it means that the plaintiff must make some showing that is reasonable, i.e., fair, proper, just and rational … , under all of the circumstances to identify its alleged trade secret in a manner that will allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits.
>
> The degree of "particularity" that is "reasonable" will differ, depending on the alleged trade secrets at issue in each case.

*Advanced Modular Sputtering, Inc. v. Superior Ct.*, 132 Cal. App. 4th 826, 835–36, 33 Cal. Rptr. 3d 901, 908 (2005) (quotations omitted) (emphasis added). Moreover, "the designation [of trade secrets] should be *liberally construed*, and reasonable doubts about its sufficiency resolved *in favor of allowing discovery to go forward*. Cisco Sys., Inc. v. Chung*, No. 19-CV-07562-PJH, 2020 WL 7495085, at *9 (N.D. Cal. Dec. 21, 2020) (quotations omitted) (emphasis added). Finally, courts do not typically require identification of trade secrets with an exacting degree of specificity for most of the categories of trade secrets at issue in this case—namely, confidential customer, sales, and marketing information. *E.g.*, *Albert's Organics, Inc. v. Holzman*, No. 19-CV-07477-PJH, 2020 WL 4368205, at *3 (N.D. Cal. July 30, 2020) ("The court agrees with plaintiff that customer and supplier information does not generally involve scientific or technical secrets that would need to be filed under seal.").

In the FAC, to the extent known at this time, Mirakl reasonably and fairly identified in substantial detail the trade secrets at issue in this case that each Individual Defendant

9

misappropriated from Mirakl. *See, e.g.*, ECF No. 19, at ¶¶ 88, 97, 108, 120, 135, 146.[4] Specifically, Mirakl identified the misappropriated trade secrets as follows:

1. With respect to the trade secrets misappropriated by Greff, Mirakl identified the following:

    a. Mirakl's trade secret Application Programming Interface ("API") zip file, which included, among other things, all of the information one of Mirakl's competitors would need to rebuild the Mirakl platform;

    b. Tangible financial and business information such as customer documentation (including, but not limited to, customer briefs, customer goals, plans, and challenges, customer complaints and Mirakl's responses to same, customer data, including details regarding growth initiatives, sales numbers, and projected growth);

    c. Notes from meetings between Mirakl representatives and Mirakl's customers executive leadership;

    d. Commercial data relating to operational workshops; and

    e. Commercial, contractual, and gross merchandise value information relating to Mirakl's projected growth through 2020.

2. With respect to the trade secrets misappropriated by Brownell, Mirakl identified the following:

    a. A Mirakl prospective customer pipeline report that includes confidential notes relating to account opportunities Mirakl actively is pursuing with a partner; and

    b. A list of prospective customers with which Mirakl is actively engaged that includes (i) the technology partner with which each of those prospective customers currently works, (ii) notes on Mirakl's discussions to date with each of the identified potential customers, and (iii) information regarding whether the opportunities are in Mirakl's sales pipeline for June 2020.

---

[4] Though Mirakl maintains that it has identified the trade secrets that it currently knows that Defendants have misappropriated, Mirakl reserves the opportunity to identify additional trade secrets misappropriated by Defendants, if revealed through the course of discovery. *See DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680 (N.D. Ga. 2007) ("[I]f the trade secret plaintiff is forced to identify the trade secrets at issue without knowing which of those secrets have been misappropriated, it is placed in somewhat of a 'Catch–22' … .").

3. With respect to the trade secrets misappropriated by Cochran, Mirakl identified the following:

   a. Notes from a call with a customer prospect that (i) include details on the prospective customer's interest in a marketplace solution and (ii) identify the prospective customer's key decision makers;

   b. Names, titles, emails, and phone numbers of prospective customers who attended an event Mirakl attended (NRF 2020);

   c. A sales overview for the central region including Mirakl's key prospective customers and partners, including notes of conversations Mirakl has had with these prospective customers and partners and details relating to the types of eCommerce technology those prospects currently use; and

   d. A summary of Mirakl's prospective customers that includes key contacts, industry insights, key business initiatives for 2020, and activity notes detailing the conversations Mirakl employees have had with Mirakl's customer prospects.

4. With respect to the trade secrets misappropriated by Chang, Mirakl identified the following:

   a. A file that contains customer-specific pricing information for a current Mirakl client;

   b. A file relating to 30 separate prospect meetings that occurred during a Mirakl event that includes details regarding the extent to which each prospect is interested in a marketplace; and

   c. A confidential sales presentation provided to a Mirakl client.

5. With respect to the trade secrets misappropriated by Yee, Mirakl identified the following:

   a. Resume of a now former Mirakl employee (Taner Bayram);

   b. A detailed map of different ecommerce systems a current Mirakl customer uses and how Mirakl's platform is integrated with those systems, which architecture diagrams could be used by a competitor to understand how Mirakl works with a specific customer and where a Mirakl competitor (such as VTEX) may be able to exploit an advantage in connecting their system into the Mirakl customer's technology ecosystem;

<ol start="3" type="a">
<li></li>
<li></li>
<li>Notes of a meeting with an existing Mirakl customer that detail that client's future plans to use different features of the Mirakl platform;</li>
<li>A detailed map of different ecommerce systems another Mirakl customer uses and how Mirakl's platform plugs in, which architecture diagrams could be used by a competitor to understand how Mirakl works with that specific customer and where a competitor (such as VTEX) may have an advantage in connecting their system into the Mirakl customer's technology ecosystem;</li>
<li>Key pieces of information relating to a current customer, which includes but is not limited to that customer's timeline of how they implemented Mirakl starting from 2018 through to the end of 2020, the Mirakl features and functionality that customer uses, architecture diagrams that show how Mirakl's system connects in with that customer's ecommerce platform, and any strategic discussions Mirakl has had with the customer; and</li>
<li>The 449-page slide deck of Mirakl's software engineering team that which includes key business decisions relating to features Mirakl is likely to develop and features Mirakl may need to strengthen.</li>
</ol>

6. Finally, with respect to the trade secrets misappropriated by Lee, Mirakl identified the following:

   a. A Mirakl list of prospects and key contacts inside each prospect organization, including emails;

   b. Slides from an internal leadership meeting that Mirakl held in 2020, with confidential information about Mirakl's hiring goals and operating costs;

   c. Pricing information relating to how Mirakl priced its solution with 14 international customers; and

   d. Mirakl's 2019 template for pitch decks the Company uses when preparing presentations for prospective customers.

ECF No. 19, at ¶¶ 88, 97, 108, 120, 135, 146.

Thus, with respect to its MUTSA claims, Mirakl has very clearly complied with its obligation to identify the trade secrets at issue with "*reasonable* particularity" sufficient to enable Defendants to engage in discovery. Defendants' assertion that Mirakl has not identified its trade

secrets is simply another delay tactic to stonewall any discovery. Respectfully, the Court should not permit Defendants to engage in this behavior, and the Court should deny Defendants' Motion for Protective Oder and instruct Defendants to respond to Mirakl's discovery requests in the timeframe outlined by the Federal Rules of Civil Procedure.

In the Parties' Local Rule 7.1 conference, Defendants attempted to contend that conducting discovery regarding Mirakl's contract and common law misappropriation claims before Mirakl provides Defendants with additional details relating to the identity of the trade secrets that Defendants stole somehow would increase the burden of discovery in this case. This ludicrous contention ignores the applicable case law and the relevant facts. First, as noted in *Neural Magic*, trade secret claims are materially different from common law confidential information claims. Second, trade secrets are a mere subset of an entity's universe of confidential information as evidenced by the obvious fact that "as the name suggests, a trade secret must be a secret." *Iconics, Inc. v Massaro, et al.*, 266 F. Supp. 3d 449, 452 (D. Mass. 2017) (emphasis added).

Moreover, Defendants' argument in this regard directly conflicts with (1) the applicable statutes, which include secrecy (or confidentiality) as a necessary element of any trade secret claim, and (2) the case law, which plainly provides that "Confidential and proprietary information may also be entitled to protection even if the information cannot be technically claimed as a 'trade secret.'" *DUSA Pharms., Inc. v. Biofrontera Inc.*, No. CV 18-10568-RGS, 2020 WL 5995979, at *1 (D. Mass. Oct. 9, 2020). In other words, a trade secret is confidential even if not all confidential information will be deemed a trade secret. Accordingly, discovery relating to Mirakl's trade secret claims will, by definition, consist of a mere subset of the discovery responsive to Mirakl's contract and common law claims, and those are claims with respect to which Mirakl is both unequivocally and presently entitled to discovery, and there are no circumstances under which requiring

13

Defendants to respond to Mirakl's discovery now will increase the burden of discovery in this case. Quite to the contrary, Defendants' dilatory tactics are the sole factor increasing the burden of discovery on the parties and this Court.

## CONCLUSION

WHEREFORE, Mirakl respectfully requests that the Court deny Defendants' Motion for Protective Order and, pursuant to Rule 37, award Mirakl its fees associated with opposing this motion on the grounds that Defendants have failed (and continue to fail) to participate in the discovery process in good faith.

Respectfully submitted,

MIRAKL, INCORPORATED

By its attorney,

/s/ Danielle Y. Vanderzanden
Danielle Y. Vanderzanden (BBO #563933)
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
One Boston Place, Suite 3500
Boston, MA  02108-4403
Telephone: 617-994-5700
Facsimile: 617-994-5701
danielle.vanderzanden@ogletree.com

Dated: May 14, 2021

## CERTIFICATE OF SERVICE

I, Danielle Y. Vanderzanden, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") this 14th day of May, 2021.

/s/Danielle Y. Vanderzanden
Danielle Y. Vanderzanden

47077424.1